UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| USTA TECHNOLOGY, LLC, *Plaintiff* § § § | |
| vs. § | Case No. W-22-CA-01214-XR |
| § | |
| GOOGLE LLC, *Defendant* § § | |

## ORDER ON MOTION TO TRANSFER VENUE

On this date, the Court considered Defendant Google LLC's motion to transfer venue discovery (ECF No. 34), Plaintiff USTA Technology, LLC's response (ECF No. 78), and Defendant's reply (ECF No. 79). After careful consideration, the motion is **GRANTED**.

## BACKGROUND

Plaintiff USTA Technology, LLC ("Plaintiff" or "USTA") is a patent licensing company formed in 2018. *See* ECF No. 1 ¶ 2. USTA is a non-practicing entity, having generated less than $50,000 in total revenue and none since 2018. ECF No. 78-2, Gordon Decl. ¶ 11. USTA is the assignee of U.S. Patent No. RE47,720 ("the '720 patent"), a patented method and apparatus for increasing the available spectrum in a wireless network by sharing existing allocated (and in-use) portions of the radio frequency spectrum to minimize the probability of interfering with existing legacy users. *See* ECF No. 1-1.

On November 11, 2022, Plaintiff filed its original complaint, alleging that Defendant Google LLC ("Google") "has and continues to directly infringe one or more claims of '720 patent by selling, offering to sell, making, using, and/or providing and causing to be used 802.11ac-compliant products," such as "Google Nest WiFi Router, Google Nest WiFi Point, and Google Pixel 7 smartphones." ECF No. 1 ¶¶ 33–34.

In April 2023, Defendant filed a motion to transfer the case to the Northern District of California (the "NDCA") under 28 U.S.C. § 1404(a). ECF No. 34. Defendant argues that the vast majority of the Google employees with relevant knowledge regarding the allegedly infringing technology are in the NDCA, where Google is headquartered and the accused devices were primarily designed. Moreover, relevant third parties, including the two suppliers who provide Google the semiconductor components at issue in this litigation, are also located in California and would be subject to subpoena in the NDCA for the production of documents, depositions, and trial.

In support of its motion, Defendant proffered, among other things, declarations from two of its employees: Raymond Hayes, a software engineer familiar with the wireless architecture of the Google Nest WiFi Router and Google Nest WiFi Point, and Nihar Jindal, a senior staff hardware engineer on the Pixel Hardware Team and leader of the Pixel WiFi team. *See* ECF No. 34-2, Hayes Decl.; ECF No. 34-3, Jindal Decl. Neither Hayes nor Jindal were aware of any employees working on the WiFi functionality of the accused products in Texas. ECF No. 34-2, Hayes Decl. ¶ 7; ECF No. 34-3, Jindal Decl. ¶ 10. Moreover, both employees identified, under seal, the suppliers of the WiFi chips for the accused products, both of whom are based in California. *See* ECF No. 36-1, Sealed Hayes Decl. ¶¶ 3–4; ECF No. 36-3, Sealed Jindal Decl. ¶¶ 5–6.

In response to Defendant's motion, Plaintiff sought leave to conduct venue discovery as to "who is involved and to what degree" in designing, developing, and manufacturing portions of the allegedly infringing products in the Western District of Texas. ECF No. 54. Plaintiff argued that venue discovery was necessary based on (1) alleged omissions from Defendant's transfer motion, including about the suppliers for earlier versions of the allegedly infringing products (such as the Pixel 5 and Pixel 6) and the Tensor chip used in the Pixel 7, and (2) Plaintiffs' belief that Samsung

manufactures WiFi chips in the accused products in Texas, which would subject Samsung to this Court's subpoena power. *See* ECF No. 56 at 5–7.

Opposing venue discovery, Defendant pointed out that the "earlier versions" of the Pixel 7 were not mentioned in Plaintiff's complaint or claim chart. *See* ECF No. 50 at 9. Nonetheless, Defendant offered declarations indicating that the previously identified suppliers in California supplied the chips for the Pixel 5 and Pixel 6, and that any devices with a "Tensor chip" use a separate, dedicated WiFi chip for WiFi functionality (the subject of the patent). *See id.* at 8–10 (citing ECF No. 50-1, Jindal Decl.; ECF No. 50-2, Samoail Decl.). Defendant further asserted that, contrary to Plaintiff's belief, the relevant WiFi chips were supplied only by the previously identified third parties in California. *See id.* at 8. Defendant's counsel confirmed in open court that Samsung does not manufacture any component in any of the accused devices that performs the relevant WiFi functionality.

After a hearing on June 13, 2023, the Court denied Plaintiff's request to conduct venue discovery, concluding that "[a]n exhaustive search of Google's activity, personnel, and suppliers in the [WDTX] for the purpose of determining the relative convenience [was] not an efficient use of judicial resources." *USTA Tech., LLC v. Google LLC*, No. W-22-CA-01214-XR, 2023 WL 4054597, at *4 (W.D. Tex. June 16, 2023) (citing *In re Apple Inc.*, 52 F.4th 1360, 1362 (Fed. Cir. 2022) ("[A]n undue delay for a motion under § 1404(a) . . . may unnecessarily require the expenditure of judicial resources in both the transferor and transferee courts")). As the Court explained:

> Even if Defendant had confirmed that Samsung manufactured the WiFi chips for the accused products in Texas, that information would not affect the Court's analysis as to the relative convenience of this venue. Plaintiff's emphasis on subpoena power is misplaced given that neither of the California suppliers are parties to this action or otherwise subject to compulsory process in this District. Furthermore, because the allegedly infringing devices were designed primarily in

> the [NDCA], that district clearly has a significant local interest in adjudicating this case.

*Id.* at *3. The Court directed Plaintiff to respond to Defendant's motion to transfer venue and stayed the deadlines set forth in the operative scheduling order pending the resolution of the motion. *Id.* at *4.

## DISCUSSION

### I. Legal Standard

Pursuant to 28 U.S.C. § 1404(a): "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." After determining that the suit could have been filed in the destination venue, the Court weighs the parties' private interests in convenience and the public interest in the fair administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974).

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). The public interest factors include "(1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws." *Id.* However, none of these factors are given dispositive weight. *Id.* The burden of showing "good cause" rests with the defendant under 28 U.S.C. § 1404(a), requiring him to persuade the court "that the transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 314 (5th Cir. 2008).

4

## II. Analysis

Neither party disputes that Plaintiff could have filed suit in the Northern District of California, the district in which Google maintains its headquarters.[1] Rather, the parties' disagreement centers on the private and public interest factors and, in particular, the private interest factors.

### A. Convenience of Witnesses

The convenience of witnesses is "probably the single most important factor in [the] transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Courts analyzing this factor "must consider" the convenience of possible party witnesses and non-party witnesses. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen Ag*, 371 F.3d at 204–05.

In its motion to transfer venue, Defendant asserts that the vast majority of the Google employees with relevant knowledge regarding the allegedly infringing functionality are in the NDCA, where Google is headquartered. ECF No. 34 at 5.[2] Specifically, Defendant identifies six key Google software and hardware engineers with knowledge of the design, research, and development of the accused products, four of whom work primarily in the NDCA, with one working in San Diego, California, and another in Taiwan. *See id.* at 9–10. Defendant has also identified its points of contact for its key third-party WiFi chip suppliers, two of whom are based

---

[1] 28 U.S.C. § 1400(b) provides that a civil action for patent infringement "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

[2] Page numbers in citations to the record refer to PDF page numbers as the document was filed on CM/ECF, which are not necessarily the same as the page numbers in the underlying documents.

in the NDCA (with the third in India). *See* ECF No. 35-2, Hayes Decl. ¶ 5; ECF No. 35-3, Jindal Decl. ¶ 6.

It is unsurprising that most of the witnesses Defendant has identified are located in the NDCA, given that, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. On the other hand, neither Defendant, nor any of its relevant employees or suppliers supporting the WiFi capabilities of the accused products appear to have any connections to the WDTX. Nor, as Defendant observes, do Plaintiff or the inventor of the asserted patent have any known connection to this District.[3] *See* ECF No. 34 at 5.

In an effort to establish a connection with this District, Plaintiff submits several LinkedIn profiles, which it contends correspond to seven Google employees in Austin, Texas. *See* ECF No. 78 at 10. Google points out that one of these individuals actually lives in the NDCA, not Austin. *See* ECF No. 79 at 6. More importantly, relying on sworn declarations from the individuals identified in Plaintiff's briefing, Defendant asserts that the remainder do not have any responsibility for the WiFi functionality of the devices accused of infringement in this case. *See Id.* at 6–7, nn.1–2. Plaintiff also repackages arguments the Court already rejected regarding the relevance of Samsung, which manufactures a "Tensor" component for Google Pixel devices. Defense counsel has confirmed that the "Tensor" component does not perform any of the WiFi functionality accused of infringement in this case.

Seeking to establish a nexus to Texas generally, Plaintiff points to its offices and manager located in the Eastern District of Texas ("EDTX") and the attorney who prosecuted the relevant patent located in the Northern District of Texas ("NDTX"). Plaintiff recently registered to do

---

[3] The asserted patent's named inventor, Jerry Burchfiel, lives in Boston, Massachusetts. ECF No. 35-1, Schweitzer Decl. ¶ 4.

business in Texas, purporting to establish its principal place of business at a postal address in Longview, Texas, which is located in the EDTX. *See* ECF No. 1 ¶ 2. Plaintiff's single member and manager works from the Longview office or his home office in Frisco, which is also located in the EDTX. ECF No. 78-2, Gordon Decl. ¶¶ 2–6, 7–8. Plaintiff has no other offices or employees. *Id.* ¶¶ 3, 8. Plaintiff also identifies the patent prosecution attorney, who resides in the NDTX, as a relevant witness located in Texas. *See* ECF No. 78 at 6; ECF No. 78-1, Caldwell Decl.

Because these offices and witnesses are not located within the WDTX or the NDCA, however, they are of little importance to the transfer analysis. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."). More importantly, given Plaintiff's non-practicing status, it is not clear to the Court why either Gordon or Calwell would be required to testify in this case—they are not technical experts; they did not contribute to the invention described in the asserted patent; and they do not possess relevant knowledge regarding Google's WiFi functionality.

Finally, Plaintiff suggests that the higher average cost of hotel rooms in the NDCA compared to hotel rooms in the WDTX counsels against transfer, regardless of where the balance of witnesses are located. *See* ECF No. 78 at 13. The relevant question does not focus on "hotel discounts in this District," however, but on "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *BiTMICRO LLC v. Intel Corp.*, No. W-22-CV00335-ADA, 2023 WL 3855091, at *3 (W.D. Tex. June 6, 2023). Regardless of hotel prices in this District, Plaintiff has failed to identify any relevant witnesses who reside in the WDTX. Accordingly, all of the relevant

witnesses "will still be required to travel to a distant forum and will be away from their homes and work for an extended period of time if this case remains in the WDTX." *Id.*

Because the vast majority of relevant witnesses are in the NDCA, and no known witnesses reside in this District, the convenience of the witnesses strongly favors transfer. *See In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *4 (Fed. Cir. Oct. 6, 2021) ("Google's primary argument is that the convenience of willing witnesses must be regarded as weighing heavily in favor of transfer because there are several potential witnesses in the Northern District of California and none in the Western District of Texas. We agree with Google.").

### B. The availability of compulsory process weighs in favor of transfer

A court's ability to compel testimony and the production of documents through its subpoena power is "an important factor in the § 1404(a) calculus." *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). Under Federal Circuit precedent, this factor "weigh[s] heavily in favor of transfer when," as here, "more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *Genentech*, 566 F.3d at 1345).

Google submitted sworn declarations identifying its third-party suppliers for the relevant WiFi chips, each of whom are headquartered in California and therefore subject to subpoena in the NDCA. *See* ECF No. 35-2, Hayes Decl. ¶¶ 3–4; ECF No. 35-3, Jindal Decl. ¶¶ 4–5. Google also identified the third-party individuals who are Google's main points of contact at the relevant chipset suppliers, and two of those individuals are in the NDCA (with the third in India). *See* ECF No. 35-2, Hayes Decl. ¶ 5; ECF No. 35-3, Jindal Decl. ¶ 6. Plaintiff does not dispute that the entities and individuals identified by Google are subject to compulsory process in the NDCA.[4] Nor

---

[4] Confusingly, Plaintiff does assert, without explanation, that the two chip suppliers located in California "are subject to compulsory process in the WDTX." ECF No. 78 at 14. Plaintiff observes that Google's WiFi chipset

does Plaintiff identify any relevant third parties who reside in the WDTX.[5]

The NDCA has usable subpoena power over the third-party witnesses likely to possess relevant information in this case; this District does not. Thus, this factor weighs in favor of transfer. *See Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

C. **The location of relevant sources of proof favors transfer**

This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence. *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020). "[T]he movant need not show that *all* relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer. Nor is this factor neutral merely because some sources of proof can be identified in the district." *Id.* at 1340 (emphasis added). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345; *see also In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Oct. 21, 2021) (focusing on "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval").

---

suppliers "both have a presence in this District." *Id.* at 9. But it is undisputed that the suppliers are headquartered in California, which is where they "reside" for purposes of personal jurisdiction. *Cf. Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding a corporation is subject to all-purpose personal jurisdiction in its "place of incorporation and principal place of business," and rejecting argument that would extend that jurisdiction to any state where the corporation "engages in a substantial, continuous, and systematic course of business").

[5] Plaintiff does assert that "Samsung is a relevant third party located in this District," although not in the contexts of its arguments on the existence of compulsory process. To the extent that Plaintiff seeks to reassert its argument that the Court's subpoena power over Samsung in this District counsels against transfer, the Court observes that Defendant's counsel has already confirmed in open court that Samsung does not manufacture any component in any of the accused devices that performs the relevant WiFi functionality.

Google submitted sworn declarations stating that its relevant technical documents are created and maintained by engineers in the NDCA. *See* ECF No. 35-2, Hayes Decl. ¶¶ 6–7; ECF No. 35-2, Jindal Decl. ¶¶ 7–11.[6] Likewise, based on the location of their headquarters and witnesses, the relevant documents Google's third-party WiFi chip suppliers also are likely to be maintained in or near the NDCA. ECF No. 34 at 12.

Plaintiff asserts that it stores records—physical and electronic—in Longview, Frisco, and Dallas. ECF No. 78-2, Gordon Decl. ¶¶ 7–8. However, Plaintiff fails to explain how these unspecified "business and patent prosecution files" in the EDTX and NDTX are relevant to the issues in this case or even to the transfer analysis. ECF No. 78 at 15–16. A patent's prosecution history is publicly available on the USPTO's website, and Plaintiff's "business" files are unlikely to be helpful given USTA's admission that it is a non-practicing entity and "has no employees." ECF No. 78-2, Gordon Decl. ¶¶ 3, 11.

The mere presence of records in both the NDCA and the WDTX does not render this factor neutral. The quantity and substance of Google's documents bearing on the accused instrumentalities, which are created and maintained in the NDCA, are of significantly greater importance to the transfer analysis. Accordingly, this factor weighs in favor of transfer.

### D. The local interests factor weighs in favor of transfer

The Federal Circuit "accord[s] significant to the location where the accused product or functionality was 'designed, developed, and tested'" and "no weight to the location of the sale of an accused product where that product is offered nationwide." *In re Apple Inc.*, 979 F.3d at 1345

---

[6] Plaintiff's argument that the location of Defendant's documents is irrelevant because they are available electronically is unfounded. *See In re Juniper*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("[W]hile electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant."); *Volkswagen*, 545 F.3d at 316 ("That access to some sources of proof presents lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

(citing *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338); *see also In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) (holding it is a "clear abuse of discretion" to grant any weight to a company's general presence in the district without "a connection to the locus of the events giving rise to the dispute").

Google has significant ties to the NDCA, where it is headquartered. The relevant third-party suppliers likewise have significant ties to California, where they are headquartered. The events that gave rise to this suit occurred primarily in the NDCA, where the relevant WiFi functionality was predominately researched, designed, and developed. *In re Samsung*, 2 F.4th at 1380 (concluding that, when the relevant "third parties researched, designed, and developed most of [the accused] applications in Northern California," this factor strongly favors transfer).

The local interests of the WDTX, on the other hand, are not implicated.[7] Google's connections with the WDTX are unrelated to this litigation: the accused functionality was not designed or developed in this District, and none of the key individuals who developed and designed the accused functionality are located here. *See In re Google*, No. 2021-170, 2021 WL 4427899, at *6 (Fed. Cir. Sept. 27, 2021) ("Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas, we agree that the local interest factor should have been weighted strongly in favor of transfer."). Meanwhile, Plaintiff's (non-operating) offices in the Eastern District of Texas and its patent prosecution attorney in the Northern District of Texas fail to establish a comparable local interest in the WDTX. *See In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) ("Since Flower

---

[7] Plaintiff observes that the Wi-Fi Alliance, an industry group that certifies compliance with the relevant 802.11 standards—and has certified numerous Google products—is headquartered in Austin, Texas. Plaintiff does not even suggest that the Wi-Fi Alliance possesses relevant information as a third-party witness. The mere presence of a related industry group within this District does not establish a local interest in the WDTX, and certainly not an interest that outweighs the NDCA's ties to this litigation.

11

Mound is in the Eastern District of Texas, not the Western District of Texas, BillJCo's office in Texas gives plaintiff's chosen forum no comparable local interest."); *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *6 (Fed. Cir. Oct. 6, 2021) (finding error with district court's reliance on plaintiff's incorporation and office in Texas, where the office was located outside the Western District).

Accordingly, this factor strongly favors transfer. *See In re Apple*, No. 2021-181, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2021) ("Because only the Northern District of California has significant connections to the events that gave rise to this suit, the local interest factor weighs strongly in favor of transfer.").

### E.     The remaining factors are neutral

Considering the remaining factors, there do not appear to be any "practical considerations" favoring either venue because neither the WDTX nor the NDCA has any previous experience with the asserted patent or accused products and there are no related lawsuits pending in either district. As to court congestion, the Federal Circuit has repeatedly "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple Inc.,* 2021 WL 5291804, at *4 (quoting *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021)).[8] Likewise, both the WDTX and the NDCA are familiar with relevant patent laws, and this case presents no material issues concerning conflict of laws or the application of foreign law. As a result, the remaining factors are neutral. *See Magic Cross Ranch, L.P. v. Manion*, No. 3:12-CV-00541-P, 2012 WL 13027449, at *3 (N.D. Tex. Sept. 25, 2012) ("The Court finds that the other public interest factors are neutral. Both [districts] are equally

---

[8] Moreover, the Court congestion factor ***cannot*** weigh against transfer where, as here, the Plaintiff admits it is a non-practicing entity. *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) (holding it is "a clear abuse of discretion to accord this factor any weight" where the plaintiff "is not engaged in product competition in the marketplace").

capable of applying the law that will govern the case. No issues exist which suggest any potential problems of conflict of laws or applying foreign law. Many courts are congested, and this factor is neutral.").

In sum, the Court agrees with Defendant that each of the private and public interest factors either favors transfer (convenience of the witnesses, availability of compulsory process, relevant sources of proof, and local interests) or is neutral (practical considerations, court congestion, conflict of laws, and familiarity with the law-at-issue). Accordingly, Defendant has met its burden of persuading the Court that the NDCA is clearly a more convenient forum for this litigation. *Toyota*, 747 F.3d at 1341 ("With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is *'clearly* more convenient.'" (quoting *Volkswagen II*, 545 F.3d at 315)); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

## CONCLUSION

For the foregoing reasons, Defendant Google LLC's motion to transfer this case to the Northern District of California (ECF No. 34) is **GRANTED**.

The case is **TRANSFERRED** to the to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404.

It is so **ORDERED**.

**SIGNED** this 26th day of July, 2023.

                                                _____
                                                XAVIER RODRIGUEZ
                                                UNITED STATES DISTRICT JUDGE